SAMUEL, Judge.
Plaintiffs, Ronald J. Bianchi and Richard C. Larison, filed this suit against Pat-tison Pontiac Co., Inc. to compel specific performance of an oral contract by which the defendant allegedly agreed to compensate plaintiffs for obtaining a Mazda automobile dealership in New Orleans. Plaintiffs alternatively seek damages in the amount of $2,500,000. Defendant’s answer generally denies the allegations of the petition.
Only the two plaintiffs testified at the trial; they also placed various exhibits in evidence. The defendant rested without presenting any evidence. Following trial there was judgment in favor of the defendant, dismissing plaintiffs’ suit. Plaintiffs have appealed.
Plaintiff Bianchi testified as follows: He met George P. Pattison, president and owner of the defendant corporation, a successful New Orleans Pontiac dealership for many years, while the former was engaged in the sale of motivation systems used by businesses having large staffs of salesmen. Mr. Pattison indicated an interest in the sale of foreign automobiles. As Bianchi had been offered a distributorship covering seven southern states for an Italian vehicle called the Otas, Pattison sent him to California to purchase an Otas for inspection. While in California, Bianchi renewed an acquaintance with the other plaintiff, Lari-son, who had been attempting unsuccessfully to obtain an interest in a distributorship for a Japanese automobile known as the Mazda. On his return to New Orleans, Bianchi gave Pattison Mazda literature furnished him by Larison.
*503 Mr. Pattison’s interest changed from the Otas to the Mazda and he requested Bianchi to go to Houston to obtain a Mazda dealership for the defendant corporation in New Orleans and in several other Louisiana cities. Arrangements were made for Bian-chi to fly from New Orleans and Larison from California, both at defendant’s expense, to meet with Mazda’s representative in Houston. Larison’s services were engaged because he had a working relationship with a Mr. Hanno, a Japanese national formerly employed by Mazda’s factory representative[1] and employed at the time by the Mazda manufacturing company itself. A meeting was arranged for October 27, 1970 with Hanno, then known to Bianchi only as “a representative of Mazda”. Hanno’s status in the Mazda organization was unclear to Bianchi at the time of the meeting.
Bianchi and Larison met with Hanno for approximately one and one-half to two hours. Hanno assured them they could inform Pattison “he had a dealership.” Nothing was reduced to writing because Hanno was unwilling to attempt to consummate a Louisiana dealership before February, 1971 due to the fact that the Mazda organization desired to develop the Texas market first, its permanent offices had not been established, and dealer application forms had not yet been printed. Hanno committed Mazda to grant defendant a dealership, without furnishing evidence of defendant’s financial or other status, solely on the strength of plaintiffs’ oral presentation and representations, documented only by a photogravure fold-out advertisement from a local newspaper advertising and explaining the defendant’s operation as a Pontiac dealership.
Both Bianchi and Larison came to New Orleans and met with Pattison the next day. They assured him they had obtained a Mazda dealership. After much negotiations Pattison agreed to compensate them for obtaining the dealership by paying them 25% of the “variable gross” profit[2] from the sale of each Mazda automobile sold for 10 years from the New Orleans dealership and 10% of the profit on each automobile sold from five other contemplated dealerships. In addition, Bianchi was to work full time with the new dealership “while the thing got into motion” at a monthly salary of $2,000 or $2,500.
Mr. Pattison refused to reduce this agreement to writing until he was awarded the dealership. It was agreed Bianchi would wait until the dealership was obtained and then join the Pattison operation on salary. He was obliged to do nothing more until Hanno furnished the application forms to Larison, at which time Larison was to send the forms to Bianchi, who was then to bring them to Pattison for completion. When Bianchi received the forms he attempted to contact Mr. Pattison to have them executed but the latter avoided contact until after Bianchi learned Mazda had granted Pattison a dealership without proceeding through Bianchi or Larison. That dealership was granted in March of 1971 and Bianchi and Pattison had seen Hanno on October 27, 1970. Pattison then repudiated the oral agreement, and this suit followed.
On cross examination, defendant attempted to establish the mission of Bianchi and Larison was to obtain a distributorship for defendant rather than a mere dealership. On cross, Bianchi testified he and Pattison could not have discussed a Mazda distributorship because he knew none was available. When it was pointed out to him he had said on direct examination that he did not know Hanno was a representative of the Mazda distributorship for the southern *504 region (as testified by Larison), he summarily stated he could not have discussed distributorships with Pattison, but offered little explanation for this statement.
Larison’s testimony was essentially the same as Bianchi’s. He stated he knew no distributorships were available because previously he had tried to participate in a joint venture distributorship for seven southern states, including Louisiana, with the manufacturer of the Mazda automobile and the manufacturer’s representative (trading company) in the United States. Eventually the distributorship was'formed as a joint venture between the manufacturer and its trading company as Mazda Motors of Texas, Inc. Larison was excluded for reasons unknown to him. He further insisted he informed Hanno he sought the dealership for himself, Bianchi and Pattison, that Hanno orally granted the dealership on the basis of their long standing association and friendship, and that the grant of the dealership was made without any specific information on Patti-son’s financial condition or proof of experience.
On cross examination, Larison could not explain why Pattison was able to obtain the dealership by negotiating with Hanno directly without the assistance of or even reference to plaintiffs, in spite of the contention plaintiffs had obtained the dealership from Hanno at the Houston meeting. Larison could not explain Hanno’s action in granting the dealership to Pattison without him in view of their supposed long personal and business relationship.
The exhibits offered in evidence by the plaintiffs include the newspaper photogra-vure fold-out allegedly used in plaintiffs’ conversation with Hanno, the correspondence between George P. Pattison and representatives of Mazda, particularly Hanno, concerning the Mazda dealership awarded to the defendant, literature relative to the Mazda which Bianchi allegedly gave Pattison following the former’s return to New Orleans from Houston, and various defendant sales records.
Plaintiffs make much of the defendant’s failure to offer evidence in its own behalf and argue strenuously that once a plaintiff makes out a prima facie case, the defendant must meet the burden of going forward with the evidence or suffer judgment against it.[3] While we do not disagree with this principle, our examination of the record satisfies us that plaintiffs failed to prove a prima facie case.
If plaintiffs’ mission was to obtain a distributorship, they obviously failed. However, without affirmative evidence that plaintiffs’ mission was to obtain a distributorship, and not a dealership as they contend, we must assume only a dealership was desired by the defendant. Relative thereto, the correspondence between Mr. Pattison and Mazda clearly shows the dealership was granted only after proof of defendant’s financial and business ability and experience, and after a personal visit to New Orleans by Hanno and other Mazda representatives to interview defendant’s principals and inspect its premises.
Assuming plaintiffs were assured by Hanno in Houston they would be granted a dealership, the meeting and intent of Hanno’s statements were known only to him and any testimony to the effect that plaintiffs were sure they obtained a dealership on the strength of Larison’s relationship to Hanno was at best self-serving and a subjective evaluation on their part of what could have been proved only by Hanno himself. We note plaintiffs did not call Hanno as a witness and did not take his deposition. By plaintiffs’ own admission, the meeting in Houston lasted for less than two hours, plaintiffs presented Hanno with no evidence of defendant’s financial strength, no applications or other documents were executed, and Hanno gave plaintiffs no written commitment of a Mazda dealership for the defendant.
*505 Under these circumstances, especially in light of the contrary indications of Hanno’s intent as shown by his correspondence and dealings directly with Pattison, plaintiffs’ own uncorroborated evaluation of Hanno’s statements to them cannot serve as sufficient proof upon which to base a judgment against the defendant. It is more probable plaintiffs were given vague and ambiguous oral assurances by Hanno to effect their removal from his office with Oriental politeness than it is probable Hanno would grant a dealership with no detailed knowledge of the financial condition and business strength and experience of the potential dealer.
In addition, the terms of the oral contract upon which plaintiffs base this suit is suspect. It appears to us the amounts to be received by the plaintiffs for the dealership in suit, 25% of the “variable gross” profit on the sale of each car for 10 years plus a monthly salary of $2,000 or $2,500 for Bianchi, were excess-sive to the point of being prohibitive from the standpoint of the dealer which would be required to pay all of its many other operating costs and expenses. In this connection, a noteworthy fact is that, at the time the alleged contract was entered into, the defendant’s president and owner had operated a successful automobile dealership for many years, a background making it highly improbable he would entertain taking a dealership likely to result in a loss. We do not say those amounts are so unreasonable as to cause us to conclude no contract was entered into on the basis of those amounts alone. We are not experts in the field and cannot reach that conclusion in the absence of supporting evidence. However, the amounts are sufficiently great as to require some explanation of reasonableness and no such explanation is contained in the record.
For the reasons assigned, the judgment appealed from is affirmed.
Affirmed.

. Apparently in common practice Japanese industries are represented in foreign countries by organizations referred to as “Trading Companies” which offer services from merchandizing and financing to investment advice and equity participation.

. Variable gross profit is defined as the remainder after deducting the cost of an automobile from its sale price.

. See Tolar v. K & G Contractors, La.App., 214 So.2d 176; 29 Am.Jur.2d § 126.